UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOY MADUKWE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT OF EMPLOYMENT DISCRIMINATION**

NOW COMES the Plaintiff, JOY MADUKWE by and through her attorneys of HALL-JACKSON & ASSOCIATES, P.C., complains of the Defendant, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, as follows:

### STATUTES, JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 & 42 USC §1981.

2. This Court has subject matter jurisdiction over the Title VII claims pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

3. Venue is proper in the Eastern Division of the Northern District of Illinois because the vast majority of employment practices alleged herein to be unlawful were committed within this judicial district.

### PARTIES

4. Plaintiff Joy Madukwe is a resident of Cook County in the state of Illinois and a former employee of The Board of Trustees of the University of Illinois.

5. The Board of Trustees of the University of Illinois is the governing body of the

University of Illinois and is a corporate body and a political subdivision under the authority of the State of Illinois Compiled Statutes. 110 ILCS 305 Sec. 1.

6. The Board of Trustees of the University of Illinois manages, operates, and controls the University of Illinois Hospital, which includes hospital, institute, clinic, outpatient department or officed owned or leased by The Board of Trustees of the University of Illinois. 110 ILCS 330 Sec. 1.

7. The Board of Trustees of the University of Illinois has 500 or more employees and has an office and does business in the County of Cook, State of Illinois.

8. The Board of Trustees of the University of Illinois is an employer within the meaning of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has exhausted her administrative remedies prior to filing this Complaint.

10. Plaintiff timely filed a Charge of Discrimination (Charge No.:440-2020-06920) against The Board of Trustees of the University of Illinois with the Equal Employment Opportunity Commission ("EEOC") on September 11, 2020, alleging discrimination and harassment based upon race and national origin, as well as retaliation for engaging in protected activity and checked that it was a continuous action. (Exhibit A)

11. It is the policy of the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. Plaintiff has no reason to believe that this policy was not followed in this case.

12. On August 9, 2022, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission for Charge No.:440-2020-06920. (Exhibit B).

13. Plaintiff timely filed an additional Charge of Discrimination against The Board of Trustees of the University of Illinois with the Equal Employment Opportunity Commission

2

("EEOC") on August 25, 2022, alleging discrimination and retaliation based upon race and national origin resulting in a hostile work environment and unlawful termination.

14. This Complaint is timely filed.

## STATEMENT OF FACTS

15. Plaintiff was hired by the Defendant in or around July 2000 as a Staff Nurse.

16. Plaintiff is Black and was born in Nigeria.

17. Plaintiff is a registered nurse.

18. Plaintiff holds a Master's in Healthcare and Nursing Administration.

19. At all times relevant to this Complaint, Plaintiff met the Defendant's legitimate expectations with regard to performance and conduct.

20. Plaintiff's most recent position was Staff Nurse I in the Department of Nursing, 4W Mother/Baby Unit.

21. The University of Illinois at Chicago is a comprehensive public university and major health system: it is one of three campuses known as the University of Illinois, all governed by the Board of Trustees of the University of Illinois.

22. The University of Illinois Medical Center and Clinics support the essential teaching and research functions of the academic units of the University's Health Sciences Center. These include medicine, nursing, dentistry, pharmacy, public health, and the associated health professions.

23. The Department of Nursing is under the leadership of the Chief Nursing Officer, Michelle (Shelly) Major, PhD, RN.

24. The Women and Children's Services fall under the direction of the Associate Chief Nursing Officer, Doreen Norris-Stojak, MS, RN.

25. The unit staff consists of the unit Director (Manager), Michelle Cherry, DNP,

RN; an Administrative Nurse 1 (Permanent Change Nurse) in each shift, Clinical Nurse Specialist; Clinical Nurse Educator (CN11); Lactation Specialist; Staff Nurses, Nurse Technicians and Patient Unit Clerks.

26. There are Charge Nurses assigned to each shift, who are responsible for the unit flow of the shift.

27. At times relevant to this complaint, Plaintiff primarily worked in Women's and Children's Services in the 4W Mother/Baby Unit and has over 19 years' experience performing Charge Nurse duties.

<u>Plaintiff Engaged in Protected Activity</u>

28. On April 14, 2011, Plaintiff spoke with Caryn Bills of the University of Illinois at Chicago's (UIC) Office for Access and Equity; Plaintiff complained of being subject to race-based and national origin-based discrimination by Diana Trial who disciplined Plaintiff for minor issues but did not discipline other nurses who committed major safety offenses.

29. Caryn Bills asked for an example of the disparate treatment and Plaintiff mentioned an incident in which babies were switched after birth and the fact that the two responsible nurses were not disciplined.

30. After meeting with Caryn Bills, Plaintiff was told by fellow nurses that she was in trouble and there was a plan to remove her from the unit.

31. On December 24, 2012, Plaintiff filed a charge of discrimination (EEOC No. 21BA30685/ IDHR No. 2013CF1713) with the Illinois Department of Human Rights (IDHR) and cross-filed with the Equal Employment Opportunity Commission (EEOC).

32. On January 24, 2013, University of Illinois at Chicago's (UIC) Office for Access and Equity transmitted the charge to Associate Chief Nursing Officer Women and Children's Services, Beena Peters, DNP, RN.

33. On February 29, 2019, the Illinois Human Rights Commission vacated the IDHR's finding and remanded the case back to IDHR for further investigation. (Illinois Human Rights Commission, IDHR Charge No. 2013CF1713)

34. On August 20, 2019, IDHR issued a Notice of Substantial Evidence and Notice of Dismissal regarding Plaintiff's charge of discrimination (EEOC No. 21BA30685 /IDHR No. 2013CF1713).

35. On August 30, 2019, University of Illinois at Chicago's (UIC) Office for Access and Equity transmitted the finding to Chief Nursing Officer, Michelle (Shelly) Major.

### Discrimination, Retaliation and Hostile Work Environment

36. Since meeting with Caryn Bills on April 14, 2011, Plaintiff has been continuously subject to a hostile work environment, discrimination based upon race and national origin, and retaliation for engaging in protected activity in the form of unwarranted disciplinary actions, unjustifiable suspensions, denial of promotions, unsubstantiated complaints about Plaintiff's skills and performance, verbal harassment, and unlawful termination.

37. Plaintiff was denied promotion to permanent Charge Nurse (AN1) position after applying for the position in 2019, 2020 and 2021.

38. Plaintiff has a Master's in Healthcare and Nursing Administration and other nurses outside of Plaintiff's protected classes, who possessed no master's degree, have been promoted to AN1, a permanent Charging Nurse role.

39. Plaintiff believe she has been denied promotion because of her race, national origin, and in retaliation for engaging in protected activity, in violation of Title VII.

40. On August 26, 2018, Plaintiff worked on the day shift with a total of eight patients a primary care nurse.

41. At about noon on August 26, 2018, Plaintiff went to pick up the Nurse Scheduling

book near the charge RN computer staffed by Sweet Vivares.

42. In response to Plaintiff retrieving the Nurse Scheduling book, Sweet Vivares stared at Plaintiff, accused Plaintiff of reading her email, stated that she was going to call security on Plaintiff, asked the unit clerk to call security to the scene and ordered the University of Illinois of Chicago (UIC) police officer to remove from the unit.

43. The two UIC police officers who arrived at the scene did not make a report.

44. On the same day, Plaintiff sent an email to the Nurse Manager of her unit at the time, Elizabeth Negrete, informing her of the incident between herself and Sweet Vivaras

45. Elizabeth Negrete informed Plaintiff that she will forward the issue to her supervisor, Dr. Beena Peters.

46. After that, both Elizabeth Negrete and Dr. Beena Peters were suddenly removed from their positions and the issue was never addressed by management.

47. Anabel Bedoya held the position of Interim Unit Nurse Manager after Elizabeth Negrete and Dr. Beena Peters were their removed from their positions.

48. On October 30, 2018, Plaintiff contacted the office of the Chief Nursing Officer, Shelly Major, by phone complaining about the harassing behavior of Sweet Vivares and her assistant insisted that Plaintiff contact Dr. Stemmerman to address harassing behavior of Sweet Vivaras directed towards Plaintiff.

49. In the first week of December 2018, a meeting of the unit nursing leadership team was held in which Diane Antonelli, a Staff Nurse, informed the team that there is a plan to get Plaintiff out of the organization and that the process should be to "target and write up."

50. Since 2018, Plaintiff has been harassed and discriminated against on the job by Sweet Vivares (Staff Nurse), Diane Antonelli (Staff Nurse), Jing Kong (Staff Nurse), Delia Sanchez (Staff Nurse), and Michelle Cherry (Director).

51. From December 2018 until Plaintiff's date of termination, Plaintiff was targeted with numerous unwarranted disciplinary actions, unjustified suspensions and unsubstantiated complaints about Plaintiff's skills and performance; Plaintiff believes every single one of the disciplinary actions, suspensions, and complaints about her skills and performance were not founded on credible facts and analysis, but these actions were part of Diane Antonelli's plan to get Plaintiff out of the organization via "target and write up."

52. Plaintiff believes Diane Antonelli's plan to get Plaintiff out of the organization via "target and write up" resulted in a hostile work environment.

53. On December 19, 2018, Plaintiff was issued a five-day paper suspension in lieu of an unpaid disciplinary suspension for alleged inappropriate communication toward the director and co-workers and insubordination.

54. Plaintiff believes she was issued the five-day paper suspension because of her race, national origin, and in retaliation for engaging in protected activity, in violation of Title VII.

55. Plaintiff believes the five-day paper suspension was part of Diane Antonelli's continuous plan to get Plaintiff out of the organization via "target and write up."

56. In 2018, Jing Kong, a Staff Nurse, and a Union Steward asked Plaintiff's co-workers to sign a petition to remove Plaintiff from the unit.

57. Beginning January 2019 until the date of her termination, Plaintiff was removed from performing duties as a Charge Nurse during her shifts.

58. On January 16, 2019, Plaintiff emailed Diane Antonelli, copying Anabel Bedoya, the unit Nurse Manager, and Doreen Norris-Stojak, inquiring as to why she was "not being scheduled for charge duty anymore."

59. In response to Plaintiff's email, on January 16, 2019, Anabel Bedoya informed

7

Plaintiff that there have been changes made to charge assignments to accomplish orientation of new charge nurses.

60. On January 16, 2019, Plaintiff further responded via email and informed Ms. Bedoya that Rachelle Redding, a Staff Nurse, inquired as to why Plaintiff has not been on the charge assignment for a while; Plaintiff also informed Ms. Bedoya that Ms. Redding also indicated that she does not perform any training or orientation during her charge days.

61. On March 1, 2019, Plaintiff emailed Anabel Bedoya, copying Diane Antonelli and others, and informed Ms. Bedoya that it has been two months since Plaintiff has been removed from performing the duties of charging nurse.

62. In the email sent on March 1, 2019, Plaintiff expresses, "It seems that I am the only one that is affected by the changes; every other nurse who performs the charge role is not affected."

63. In the email sent on March 1, 2019, Plaintiff states that the believes that removing her charging nurse duties is retaliatory action.

64. Plaintiff believes the removal of her charging nurse duties was part of Diane Antonelli's continuous plan to get Plaintiff out of the organization via "target and write up."

65. On April 17, 2019, Plaintiff was issued a ten-day unpaid suspension for alleged continuous inappropriate communication toward co-workers and delay in patient care.

66. Plaintiff believes she was issued the ten-day unpaid suspension because of her race, national origin, and in retaliation for engaging in protected activity, in violation of Title VII.

67. Plaintiff believes the ten-day unpaid suspension was part of Diane Antonelli's continuous plan to get Plaintiff out of the organization via "target and write up."

68. On January 16, 2020, during conversation, Michelle Cherry asked Plaintiff where

8

she was from and Plaintiff informed Ms. Cherry that she has been living in the United States for close to thirty years but was originally from Nigeria.

69. On August 8, 2020, Sweet Vivaras called Plaintiff incompetent as a nurse.

70. Plaintiff believes Sweet Vivares would never call an Asian or Hispanic or White nurse with seniority over her, in terms of years of experience in the organization, incompetent.

71. Plaintiff believes she was called incompetent because she was born in Nigeria.

72. On September 9, 2020, Plaintiff was issued a 30-day unpaid suspension for alleged continuous inappropriate communication toward co-workers, unprofessional behavior, and poor customer service.

73. Plaintiff believes she was issued the 30-day unpaid suspension because of her race, national origin, and in retaliation for engaging in protected activity, in violation of Title VII.

74. Plaintiff believes the 30-day unpaid suspension was part of Diane Antonelli's continuous plan to get Plaintiff out of the organization via "target and write up."

75. Plaintiff grieved the 30-day unpaid suspension.

76. On January 28, 2021, during the first grievance hearing, Michelle Cherry, Director of Patient Care Services stated via zoom video, "Multiple people told me about Joy when I joined the organization."

77. Michelle Cherry started her position on April 22, 2019, and her statement during the January 28, 2021, zoom video demonstrates her knowledge of Plaintiff's former protected activity.

78. The INA rep. Dan Shansky, Kevin Costello, RN, Dr. Jill Stemmerman and Tareg Qtami, HR representative were all present and heard this comment; Dr. Jill Stemmerman, the presiding Nurse Executive, did not address the comment.

79. On March 4, 2021, during the second grievance hearing presided by Denise Swenson, Tareg Qtami, HR representative stated, "We have been trying to get her out since 2012, please let['s] hurry up and finish the job."

80. Ms. Swenson did not address the comment during the hearing.

81. Plaintiff was placed on administrative leave from September 2, 2021, pending hospital investigation based upon false accusation by co-workers Sweet Vivares, a Filipino, and Lucia Joligon, a Filipino.

82. On November 3, 2021, Plaintiff was informed that she was being placed on suspension without pay.

83. On November 17, 2021, Plaintiff was terminated by the Defendant.

FIRST CAUSE OF ACTION

**COUNT I: DISCRIMINATION (RACE) IN VIOLATION OF TITLE VII & SECTION 1981**

84. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

85. Defendant discriminated against Plaintiff based on her race in violation of Title VII of the Civil Rights Act of 1964 and 42 USC § 1981.

86. Plaintiff is a member of a protected class.

87. Plaintiff is Black and a member of the African race.

88. Plaintiff has suffered adverse employment actions because of her race.

89. Defendant has discriminated against Plaintiff on the basis of her race in violation of Title VII of 1964 & 42 USC § 1981, by denying her the same terms, conditions, and privileges of employment available to employees who are not Black or African, including but not limited to denying her the opportunity to work in an employment setting free of unlawful discrimination

and advancement opportunities.

90. While employed with the Defendant, Plaintiff was subjected to different terms and conditions of her employment.

91. Plaintiff received numerous unwarranted disciplinary actions; she was unjustifiably suspended multiple times, she received numerous unsubstantiated complaints about her skills and performance; she was denied charging nurse duties; she was denied promotion as late as 2021; she was subject to verbal harassment; she was placed on an administrative leave of absence; and she was eventually terminated.

92. Defendant had discriminated against Plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981, by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or correct unlawful discrimination.

93. Defendant's unlawful and unwelcomed conduct in violation of Title VII & Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of damages.

94. As a direct and proximate result of Defendant's actions, Plaintiff has suffered economic loss, including loss earnings and loss benefit, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, and consequential damages against Defendant, as well as attorney's fees and costs as a result of suffering discrimination by Defendant in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981.

SECOND CAUSE OF ACTION

**COUNT II: DISCRIMINATION (NATIONAL ORIGIN) IN VIOLATION OF TITLE VII & SECTION 1981**

95. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

96. Defendant discriminated against Plaintiff based on her national origin in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981.

97. Plaintiff is a member of a protected class.

98. Plaintiff was born in Nigeria.

99. Plaintiff has suffered adverse employment actions because of her national origin.

100. Defendant has discriminated against Plaintiff on the basis of her national origin in violation of Title VII of 1964 & 42 USC § 1981, by denying her the same terms, conditions, and privileges of employment available to employees who were not born in Nigeria, including but not limited to denying her the opportunity to work in an employment setting free of unlawful discrimination and advancement opportunities.

101. While employed with the Defendant, Plaintiff was subjected to different terms and conditions of her employment.

102. Plaintiff received numerous unwarranted disciplinary actions; she was unjustifiably suspended multiple times, she received numerous unsubstantiated complaints about her skills and performance; she was denied charging nurse duties; she was denied promotion as late as 2021; she was subject to verbal harassment; she was placed on an administrative leave of absence; and she was eventually terminated.

103. Defendant had discriminated against Plaintiff on the basis of her national origin in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981, by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or correct unlawful discrimination.

104. Defendant's unlawful and unwelcomed conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious

disregard of Plaintiff's civil rights, entitling Plaintiff to an award of damages.

105. As a direct and proximate result of Defendant's actions, Plaintiff has suffered economic loss, including loss earnings and loss benefit, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, and consequential damages against Defendant, as well as attorney's fees and costs as a result of suffering discrimination by Defendant in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981 .

THIRD CAUSE OF ACTION

**COUNT III: RETALIATION IN VIOLATION OF TITLE VII & SECTION 1981**

106. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

107. Defendant retaliated against Plaintiff based on her protected complaints about unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981.

108. Plaintiff engaged in protected activity by opposing discriminatory employment practices when she spoke with Caryn Bills of the University of Illinois at Chicago's (UIC) Office for Access and Equity about being subject to race-based and national origin discrimination on April 14, 2011, filed an EEOC charge on December 24, 2012, filed an EEOC charge on September 11, 2020, and when she sent an email, on March 1, 2019, to Anabel Bedoya stating that she believes that removing her charging nurse duties is retaliatory action.

109. Plaintiff continuously experienced retaliation when she began reporting discrimination, harassment and retaliation as early as April 14, 2011.

110. When Plaintiff made numerous complaints of discrimination, harassment and

13

retaliation to Defendant, Plaintiff had the reasonable belief that she was opposing unlawful discriminatory employment practices.

111. Defendant and Defendant's agents were aware of Plaintiff's protected activity.

112. Plaintiff has suffered adverse actions because of her protected activity.

113. Plaintiff received numerous unwarranted disciplinary actions; she was unjustifiably suspended multiple times, she received numerous unsubstantiated complaints about her skills and performance; she was denied charging nurse duties; she was denied promotion as late as 2021; she was subject to verbal harassment; she was placed on an administrative leave of absence; and she was eventually terminated.

114. There is a causal connection between Plaintiff's protected activity and adverse employment actions suffered by Plaintiff.

115. As described more fully above, Defendant engaged in unlawful employment practices by retaliating against Plaintiff for opposing discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981.

116. Plaintiff administratively exhausted her remedies prior to filing this suit.

117. Defendant's actions were willful and malicious.

118. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

119. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

120. As a direct and proximate result of Defendant's actions, Plaintiff has suffered economic loss, including loss earnings and loss benefit, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not

limited to damages for emotional distress, compensatory, and consequential damages against Defendant, as well as attorney's fees and costs as a result of suffering retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964 & 42 USC § 1981 .

FOURTH CAUSE OF ACTION

**COUNT IV: HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

121. Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

122. Plaintiff was subjected to a hostile work environment by Defendant through its employees and agents.

123. This harassment by Defendant was so severe and pervasive as to alter the terms, conditions and privileges of Plaintiff's employment. This harassment affected a term, condition or privilege of Plaintiffs employment insofar as it created a pervasive atmosphere of disrespect, ridicule, insult, discriminatory animus, and a threatening environment to which no employee should have to be subjected.

124. Plaintiff was repeatedly subjected to mistreatment and verbal harassment from employees and agents of Defendant. The harassment took the form of yelling and embarrassing Plaintiff in front of co-workers, threatening to call the police on Plaintiff, name calling, gathering signatures to petition to remove Plaintiff from her working unit, unwarranted disciplinary actions; unjustifiable suspensions, numerous unsubstantiated complaints about her skills and performance, frequent staring at Plaintiff and interrupting Plaintiff's lunch time reducing or eliminating her time to eat.

125. This harassment occurred because Plaintiff engaged in protected activity, including but not limited to, opposing Defendant's discriminatory practices, speaking with Caryn Bills of the University of Illinois at Chicago's (UIC) Office for Access and Equity about being

subject to race-based and national origin discrimination on April 14, 2011, filing an EEOC charge on December 24, 2012, filing an EEOC charge on September 11, 2020, and sending an email, on March 1, 2019, to Anabel Bedoya stating that she believes that removing her charging nurse duties is retaliatory action.

126. Defendant certainly knew about the harassment and failed to take any action to prevent it.

127. As a direct and proximate result of Defendant's actions, Plaintiff has suffered economic loss, physical harm, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, and consequential damages against Defendant, as well as attorney's fees and costs as a result of suffering a hostile work environment created by Defendant in violation of Title VII of the Civil Rights Act of 1964.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Illinois;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her

employment and personal life;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages

DATE: November 7, 2022

                                                                         Respectfully submitted,
                                                                         /s/ Chiquita Hall-Jackson
                                                                         Chiquita Hall-Jackson

Chiquita Hall-Jackson
Attorney for Plaintiff
Hall-Jackson & Associates, P.C.
180 W. Washington St., Suite 820

Chicago, IL 60602
312-255-7105